Good morning, Your Honors, and may it please the Court. My name is Todd Borden. I'm with the Federal Public Defender's Office here in San Francisco, and I represent the appellant Deauntre Montgomery. I'm going to try to save two minutes for rebuttal, and I'll make sure to keep an eye on the clock. When San Francisco Police Department officers encountered Mr. Montgomery, I acknowledge that they had reasonable suspicion to believe that he was trying to or had the authority to detain Mr. Montgomery. So you're considering it was a valid Terry Stopp? Correct, Your Honor. Yes. But really, a point of emphasis in this appeal from our perspective is that we need to distinguish between the Terry Stopp and the Terry Frisk. And the Terry Frisk, as we all know, requires reasonable suspicion to believe that Mr. Montgomery was armed and dangerous. And on that question, I don't think there is sufficient proof and that the district court erred in denying suppression in this case, when you look to sort of the totality of the circumstances. And I would submit the most probative factor here has to be what Mr. Montgomery was doing or not doing with his right hand, and that I think if the Court looks cumulatively to the other factors, they don't rise to the level of reasonable suspicion. So as a result, I sort of, today as I'm speaking with the Court, I'm going to look first to Mr. Montgomery's hand movements and the testimony around that and the Court's at the other factors. I don't intend to discuss whether or not suppression is the appropriate remedy in this matter, although if the panel has questions, I'm, of course, happy to entertain them. So basically what happened here is we have two officers that testify somewhat differently about the hand movements, and the district court said, well, they were at different angles, but they both saw something they thought was suspicious in the hand movements. Why does the Court need to reconcile which officer was correct or not? Can't the Court just say, look, they both saw something suspicious with the hand movements? Is that sufficient? So I have two responses to that, Your Honor. First, I would somewhat question the Court's premise that the district court found that they were looking at different angles and therefore sort of harmonized the testimony as suggesting, well, maybe they were seeing you know — The officers testified, correct? I'm sorry, Your Honor? The officers testified as to what they saw, right? Correct. Both officers took the stand. In fact, they physically demonstrated what they saw to the district court. That's right, Your Honor. And the district court concluded, although there were some differences in what they saw, there was sufficient reasonable suspicion to pat your client down. Is that correct? That's correct, Your Honor. And what's the standard of review? I'm glad you asked, Your Honor, because I think that is really important in this case. So I want to point the panel to the Ornellos decision by the Supreme Court. You could start by saying the standard of review — I'm sorry, Your Honor. I'm sorry, Your Honor. I was clearing my throat excessively there. Standard of review is de novo as to whether or not there is reasonable suspicion. That's Ornellos. But with deference to the district court's factual findings and their — and the inferences or their analysis of the facts as they're presented. So, yes, the reasonable suspicion analysis, as the government points out in its brief, does entail some degree of deference to the officers. But I don't think — but the factual findings here have to be reviewed only for clear error, and it's only findings of historical fact. And here I think it's important that the panel look to the district court's findings in its order, and they're very paltry. It only takes up one page of its order. That's at Excerpts of Record 13 and 14. And on this critical issue of the hand movements, the district court did not make any finding of historical fact as to what Mr. Montgomery was actually doing with his hand. So your argument, as I understood it from your brief, was that these officers presented conflicting and irreconcilable accounts of what happened. And so you couldn't articulate reasonable suspicion because these two accounts were so different, you couldn't reconcile them. And I believe you cited one case for that proposition, and the facts of that case were one officer presenting testimony that was in conflict. I believe the testimony was, the occupants of the vehicle looked at me nervously, or the occupants of the vehicle refused to look at me. So those are diametrically opposed. Refused to look at me, looked at me nervously. I would think another example would be, was running towards me, was running away from me. Was on foot, was driving a vehicle. I mean, you can come up with scenarios where the testimony would be irreconcilable and in conflict. But here, it seems that the officers testified, one was on the left side of Mr. Montgomery, one was on the right. This is after a year has passed. They both recalled there was something suspicious about the hand movement that led them to the frisk. And as I looked at the testimony, and I'm looking at the excerpts of record at page 39 and 79, one officer talked about Mr. Montgomery's hand going towards his waist. The other officer, who was on the other side, said that the arm didn't swing. When a person turns away from you, their arm would swing, and the arm was unnaturally still. So I didn't read that testimony as being in conflict. They both saw something suspicious about his movements. One talked about the hand, one talked about the arm. So how do you, how do you, how do you explain that this is somehow irreconcilable? Well, I somewhat respectfully disagree that they're not in conflict, Your Honor, because as you noted, Officer Fry's testimony was that Montgomery's hand, you know, sort of what stood out to him and what really triggered the frisk in this case was that he thought it just seemed unusually stationary. Whereas Officer Matthews testified that it was. But that, I'm sorry, that's not what he said. So Officer Matthews talks about the hand movement, this is at ER 39, going straight from up here to down towards his waistband. Presumably when he says up here to down, he's then at that point reenacting this, acting this out in the courtroom. And then on page 79, the other officer says, he turned quickly to the right, and I didn't see it, any swing or movement of the right arm. That right arm seemed to stay stationary. So to me, they're talking about two different things, an arm movement, whether the arm swings away from the body, and whether the hand is being held close to the waist. So I acknowledge that that, I guess I could see that distinction, Your Honor. I'm not, I guess I just read the record differently, and that... But it's critical because your argument is that they can't articulate reasonable suspicions because they give us irreconcilable accounts of what occurred. And so the district court heard this testimony, saw the officers reenact what they encountered on the scene, and found that even though they had differences in how they described what occurred, they articulated reasonable suspicions. So why should we find differently? Well, so I want to, I don't think the district court did make a finding as to the actual hand movements. There's no finding of historical fact as to... No, what you said precisely was, although the officers remembered different movements, they each remembered hand positions consistent with a gun in the waistband. So, I mean, why, you take that, and I take your point that the officers testified somewhat differently. I may read the record the way you do. But that's not unusual in any scenario where we have eyewitness testimony. They remember things, there's no, it's a rare case where you get people remembering the same thing. So, if the district court concluded that they, each officer had separately detected a movement or observed a movement that was consistent with having a gun in the waistband, what's wrong with that? Well, Your Honor, I think that when the district court, you know, says that, well, it caused the officers to think something was suspicious or it triggered a certain reaction in the officers, I'm concerned that that's not a, rooting it specifically in articulable facts, but it's sort of just, that's sort of more of a legal conclusion. So the officers ultimately, you know, subjectively decided that there was something suspicious going on. But Terry does tell us that it's important that, you know, we don't look at inchoate hunches or unparticularized suspicion, but that we look at specific articulable facts. And here, I think the district court sort of abdicated its responsibility of resolving these disputed facts. I'd also note, too, that it's important to recall that the government does. Let's assume that only one officer had testified. Just pick one. Wouldn't that have been sufficient? I acknowledge, Your Honor, I would have a substantially harder case to present to you today, but I think it's important that we do acknowledge the government chose to put on the government, the evidence the government chose to put on, and it did bear the burden of showing that this warrantless search fell into a Fourth Amendment exception. And when you put on testimony of two officers who, you know, I mean, respectfully, Judge Beatty, I think there is a bit more of a conflict there. But there are two officers who are standing on opposite sides of the individual. One's on the left, one's on the right, and they see the arm movement, the hand movement differently. But they both see something suspicious that leads them to believe that there could be contraband or a weapon. And they don't consult with each other. They don't stop and talk about it. They both reach that conclusion based on what they've seen occur. And it's not just that factor. There were four or five other factors that I don't think anybody was arguing standing alone. Any of those factors would have been reasonable suspicion. But under the totality of the circumstances, which included the officer's observation of how the defendant was moving, they thought there was reasonable suspicion. So I'm nearly running out of time, but I just do want to make one point about the different vantage points, and that's to point out that at Excerpts of Record 84, Matthews does say they're right next to each other. You know, they are to the left and to the right, but they are in very close proximity. So I think that does make it a bit harder to sort of take the approach of harmonizing their testimony. And so with that, I would like to reserve my remaining six seconds. I'll give you a little bit of time. Good morning, Your Honors. May it please the Court. Jonas Lerman for the United States. After watching both of these officers and the defendant physically reenact these events and considering the testimony of all the witnesses, the district judge believed the officers. Except he said they saw different movements. Well, he did say they observed different things. And then he went on to say that even considering, and this is at ER 16, even considering the differences in the officers' observations of Montgomery's hand movements, both officers saw a movement that appeared suspicious and unordinary, indicating to them that Montgomery had a weapon in his waistband. And he also found that their testimony was coherent and plausible. So let's assume hypothetically, and I know you may disagree with this, it's hypothetically that they're describing they both had the same vantage point and they recall it completely differently. And that's the key element, which it is here. I think everybody can see is that the hand movement was, is the most crucial part of reasonable suspicion of risk. So if hypothetically they're testifying about that you can't reconcile what they saw, how are we supposed to resolve that on appeal? In the same way that juries can convict someone beyond a reasonable doubt even though witnesses' memories vary. If that can be true for the beyond a reasonable doubt standard, it must be true for the much, much lower standard of reasonable suspicion. Of course, we're not a jury, so I mean, the district court did not resolve, I mean, in that circumstance, what's the duty of the district court? It would seem to me you have to determine the historical facts. Well, I think the duty is to determine is there enough overlap between what these two officers observed to create reasonable suspicion? And is each officer credible? And here the district court answered both of those questions in the affirmative, that he found both of the officers credible. And he didn't find anything that was so conflicting about their testimony to obviate reasonable suspicion here. And I think it's important to look at the vantage points. I know you were asking me about a counterfactual, but the facts here were that... I was asking you a hypothetical, not a counterfactual. A hypothetical, yes, yes. But here Officer Matthews, he testified that he had a better view of Montgomery's right hand, while Officer Frye had a better visual of his left hand. That's at ER 54. Officer Matthews said he could directly see on the right-hand side of the defendant, ER 35. The right hand was fully visible to Officer Matthews. So the vantage point, I think, is important here. And the testimony was not irreconcilable, as Judge Beatty's questions were getting to. There's no conflict in the testimony that one officer saw reaching for the waistband and the other saw an unnatural arm position during the turn. The district court found that each officer observed facts that simultaneously and independently caused each officer... That's not what the district court said, though. He said they remembered different movements. He said they observed different movements. I think your case would be stronger if the district court had said just what you said. But it's pretty cryptic. Well I'm not quarreling with you. I'm just saying that that's reading a lot into one sentence. Well I think also, you know, we're focusing on the hand movements, but he also looked at the totality of the circumstances. And I can talk about some of those other factors if the court would like to, but, you know, this was one factor among many that... Right, but this is a critical factor, wouldn't you agree? It was a critical factor. Yeah, I mean, the rest of them may have contributed to the totality of the circumstances, but without the observation, probably the rest don't add up. You agree with that? I'm not sure that's true. We would certainly agree this is the most important factor, but I think, for example, it has to be viewed through the lens of the officer's training and experience. They know this corner very well. It's a corner notorious for drug crimes, sorry, for gun crimes. I think we're all familiar with the corner. Yes. Yes. I walked there this morning. Let me ask you a question about the hand movement. Is it correct that the hand movement in question was Montgomery's right hand? Yes. And one officer saw the hand move toward the waistband? Correct. That was Officer Matthews. And the other officer saw the right hand not move at all? He saw the arm not moving during the turn, which looked suspicious to him and unnatural. Both of them saw an unnatural movement on the right side. Officer Matthews, the hand reaching, and Officer Frye, the arm not moving. But again, this could have been at different moments, and they had different vantage points. One thing on the standard of review, Judge Hawkins, you asked about that, and my friend on the other side was going to talk about Ornelas, and I think that's actually a very helpful case for us here because it talks about how ultimately the reasonable suspicion question is a legal question reviewed de novo, but then it goes on to say that this is not really normal de novo review. We hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers, and it goes on to say that those inferences, including the inferences by the local district judge, deserve deference. And here, Judge Alsop has been a judge here for 20 years. He's very familiar with the northwest corner of 7th and Market and the chronic crime problems there. So those inferences that he drew from the historical facts, those deserve deference. If the Court has other questions, I'm happy to answer them, but I'd submit otherwise. Thank you. Thank you. Well, I have very little time, Your Honor, but I just want to briefly respond to what the government just said there about giving due weight to historical facts. And I think it's important that any deference or due weight that's owed to any factual finding must be rooted in an actual historical fact finding here. And again, I would reiterate that we just don't have any historical fact finding by Judge Alsop on this critical point, and I think that really makes appellate review difficult here and that, therefore, the government has not sustained its burden. So we would respectfully ask the Court to reverse and remand with instructions to grant the motion. Thank you, Counsel. Thank you both for your arguments today. In case you'd just like to go be submitted for a decision.
judges: Thomas, Hawkins, Bade